Harold R. Sodbít, J.
In this proceeding the plaintiff, City of Amsterdam, seeks a preliminary injunction to enjoin the defendants from the enforcement of chapters 724 and 725 of the Laws of 1974 which would compel plaintiff as a public employer to engage in final and binding compulsory arbitration with its employees in the Police and Fire Departments. Underlying this application for a preliminary injunction is an action for declaratory judgment instituted by plaintiff against defendants to declare the provisions of chapters 724 and 725 unconstitutional, null and void.
Specifically, City of Amsterdam, ‘ ‘ prays for an order declaring Chapters 724 and 725 of the Laws of 1974 unconstitutional and permanently enjoining the defendants from enforcing same on the grounds that: (1) Said laws are a violation of the concept of home rule and of the Municipal Home Rule Law in that it vitiates, erodes and violates and diminishes Home Rule. (2) Said laws are a violation of the New York State Constitution, especially Article IX, section 2 (b) (1) which provides for enactment of such statutes in two (2) successive years. (3) Said laws are a violation of the New York State Constitution and especially Article IX, .section 3, in that the Legislature has by these statutes impaired and restricted the affairs of local government contrary thereto. (4) Said laws are a violation of the New York State Constitution and especially Article XVT, section 1, in that the statutes result in a surrendering of the right of taxation by permitting arbitrators to tax local governments by their determinations. (5) Said laws are a violation of the New York State Constitution and especially Article III, section 17. By this statute they are granting to certain classes the right to compulsory arbitration without granting the same *678 right to everyone and they are further singling out a group, the taxpayers, whose rights are being prejudiced by their actions. (6) These statutes contravene public policy by jeopardizing a system of government of the people and substituting a policy of government by arbitration which further jeopardizes the integrity of the Constitution.”
Prior to July 1, 1974, the City of Amsterdam, and the police and fire personnel represented by Local 294 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America were engaged in 1 ‘ collective negotiations ’ ’ pursuant to the Taylor Law (Civil Service Law, art. 14), had gone to fact-finding and were at impasse subsequent to July 1, 1974. Local No. 294 petitioned the Public Employment Relations Board on ¡September 5, 1974 to refer the impasse to an arbitration panel pursuant to the above-mentioned statutes, naming as their arbitrators one of their negotiators, the business agent of Local No. 294. The Public Employment Relations Board (hereinafter “ PERB ”), thereafter advised the City of Amsterdam that, since it had not designated an arbitrator, they would designate one for the city, and did so, naming the Mayor of Amsterdam as arbitrator. At this point, the city obtained an order to show cause and a stay order enjoining and restraining defendants from proceeding under chapters 724 and 725 pending the determination of the preliminary injunction motion. Plaintiff served all papers, including a complaint, on September 30.
This court heard oral arguments of plaintiff and defendants on October 15,1974 at Special Term held in the County of Montgomery, Village of Fonda, State of New York. , On the same day, the court granted the Police Conference of New York, Inc. permission to file an amicus curiae brief and thereafter heard an oral argument by the latter’s representative. Police Conference of New York, Inc. was not, however, granted the status of intervenor-defendant. Subsequent to oral argument, similar permission to file an amicus curiae brief has been granted to the New York State Professional Fire Fighters Association, Inc.
Plaintiff alleges:
‘ ‘ Paragraph 13. That the plaintiff city of Amsterdam, whose fiscal year is from January 1 through December 31, by such statutes imposing compulsory arbitration, will be compelled to make expenditures of money which have not been budgeted and could not be borrowed and would compel the municipal corporation to engage in unlawful borrowing to make the pay *679 ments ordered by a third party stranger, if the statutes were complied with.
‘ ‘ Paragraph 15. In the event that the city of Amsterdam is compelled to engage in compulsory arbitration and unless restrained or prohibited, it will canse the plaintiff and the people of the city of Amsterdam irreparable and immediate damage in that city would be compelled to borrow money other than in ways provided by law and would thus disrupt its financial structure and impair its general financial ability to obtain loans and borrow money and affect its credit rating. Such will also result in financial damage to the people of the city of Amsterdam and will disrupt, disorganize and cripple the operation and structure of the city of Amsterdam to Its detriment and its welfare, safety, and the convenience of the people of the city of Amsterdam for all of which the plaintiff has no adequate remedy at law.”
In the “ Fact Finder’s Report and Recommendations,” case No. M-7L-109, Lewis R. Salkever, fact finder, the following are noteworthy (pp. 2, 8) :
“II. Issues, B. Wages Union wants a 30% increase * * * City, while it was not prepared to present an alternative 1 percentage ’ .wage increase s ° cited the patterns of increase already negotiated for other city employees and referred to its inability to borrow legally prior to January 1, 1975 in the form of 1 tax anticipation notes ’ the sums needed to meet a 30% increase to say nothing of the cost of other changes sought by the Union. * * *
“ IV. Recommendations, B. Wages at all steps on the schedule for police and fire personnel should be increased by $850.00 retroactive to July 1, 1974 and should be further increased by $1,100.00 on July 1, 1975.”
Defendants argue that: plaintiff has not shown any irreparable harm as a basis for the preliminary injunction, plaintiff has not overcome the presumption of constitutionality attaching to chapters 724 and 725 and has not met the burden of proof, which is to demonstrate the unconstitutionality of the statutes in question beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37.) More particularly, the Attorney-General points out in his brief: 16 although the award of the arbitration panel is ‘ final and binding ’ and ¡ not subject to the approval of any local legislative body or other municipal authority ’, it is not automatic or self-executing. Thus, until such time as an award is enforced against it, plaintiff has not suffered irreparable harm; further, the assumption that the eventual award will *680 be harmful to plaintiff in fiscal terms is entirely speculative at this time.”
The attorney for defendant, Local 294, alleges: 11 Upon information and belief, the city has provided in its 1974 budget for appropriations to cover some increases in wages and benefits for policemen and firemen which, to date, have not been expended for that purpose.”
In reply, plaintiff’s attorney states: “ An argument was made that the city has set aside a considerable sum of money in anticipation of salary increases in the police and fire departments. This is untrue. The city is called upon to negotiate with four districts and separate unions. In its budget for 1974, it had set aside some $60,000.00 for salary increases. Due to circumstances, this money has been expended for the average 10% increases granted to most other units. The city offered a similar 10% increase to police and firemen which was rejected. There is no money being held in escrow or otherwise in anticipation of increases herein.”
The most significant change chapters 724 and 725 make from prior law is: the determination of the public arbitration panel “ shall not be subject to the approval of any local legislative body or other municipal authority.” (L. 1974, eh. 724, § 3; L. 1974, eh. 725, § 3.) A political decision, namely what type and the terms of a collective bargaining agreement contract the City of Amsterdam will malte and bind itself to, has been thus removed from the jurisdiction of elected public officers (the councilmanic body and elected executive officers) and placed within the jurisdiction of a, three-person, appointive “ public arbitration panel ”. (L. 1974, ch. 724, § 3.)
While the panel’s determination “ shall be final and binding ” (L. 1974, ch. 274, § 3), this court interprets Mount St. Mary’s Hosp. v. Catherwood (26 NY 2d 493, 494 [headnote No. 2]) to allow judicial review under CPLB 7511 on “ whether the award [or here determination] is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record.” But the same case also contains the following statement (p. 510):
“ Given a reasonable basis for the award the court’s power to review, however, under any theory or by any procedure, ceases.”
In the same case, Chief Judge Fuld, in his concurring opinion, took issue with the majority’s “ reading into ” CPLB 7511 a new standard of review for compulsory arbitration. He states (pp. 518-1519): *681 (Reetz v. Michigan, 188 U. S. 505, 507.) Once a full and sufficient hearing has been held, whether by court or administrative agency, ‘ due process does not require that a decision made by an appropriate tribunal shall be reviewable by another. ’ (St. Joseph’s Stockyard Co. v. United States, 298 U. S. 38, 77.)”
*680 11 It must, however, be understood, as the Supreme Court has put it, that ‘ [d]ue process is not necessarily judicial process. ’
*681 “ Administrative determinations, it is true, are usually subject to review to ascertain whether they are reasonable or supported by sufficient evidence. However, the availability of such review turns not on any constitutional requirement but on legislative decision. There is no constitutional right to appeal and, consequently, the Legislature is privileged to provide that an administrative determination is to be treated as final and unappealable. Although, in some instances, one may debate the wisdom of rendering such determinations final, 1 the plain fact remains that the Supreme Court has never held that denial of a limited review is a denial of due process of law.’ (4 Davis, Administrative Law Treatise, § 28.19, p. 106.) ” (Emphasis added.)
According to Chief Judge Fuld, then, the words “ final and binding ” may indeed mean that no judicial review of the determination of the panel whatsoever is required. This interpretation is supported by noting that the statute in Mount St. Mary’s (Labor Law, § 716) made specific reference to review of the award under article 75 of the CPLR. The Civil Service Law nowhere makes such a reference to review under article 75, but does provide, in section 213, for review of1 ‘ orders of the board ’ ’ (“board” — means “ the public employment relations board” [Civil Service Law, § 201, subd. 1]) pursuant to CPLR article 78.
Indeed, if the Legislature’s silence on reviewability is indicative of its intent to cut off any judicial review (and such an interpretation of intent is supported by the limited effective period of the panel’s determination — approximately two years in any case), the panel is accountable to no one and is controllable only by subsequent enactments of the State Legislature. The court’s role is reduced to mere confirmation of the award under CPLR 7510. Fortunately, the Mount St. Mary’s holding does require article 75 review in cases of compulsory arbitration. But the mere fact of reviewability does not mean chapters 724 and 725 are constitutional. There are other factors involved.
“No taxation without representation” was the rallying cry of the American struggle for independence (Pollack v. Farmers’ Loan & Trust Co., 157 U. S. 429, 556 [1894]). Here, this court must decide whether that principle remains vital under the United States Constitution and the New York State Constitu *682 tion or is supplanted by a new principle: taxation without representation is constitutional given the permissible scope of judicial review under article 78 of the CPLR and/or article 75 of the CPLR.
This court must consider the question of whether the State may constitute a local legislative body by the appointive rather than the elective process. This question was specifically reserved in Sailors v. Board of Educ. (387 U. S. 105, 109-110). It is presented here, since the public arbitration panel performs an essentially legislative function in the classical sense. This assertion is beyond dispute after a consideration of former paragraph (e) of subdivision 3 of section 209 of the Civil Service Law, prior to the enactment of chapters 724 and 725, under which the “ legislative body of the government involved ” was the final arbitrator of impasses in collective bargaining negotiations between public employers and organizations.
The one-person, one-vote principle is now clearly applicable to local governmental units (“ units of * * * general governmental powers over an entire geographic area ” [Avery v. Midland County, 390 U. S. 474, 485] “ elective legislative bodies exercising general governmental powers at the municipal level ” [Seaman v. Fedourich, 16 N Y 2d 94, 101]). But, by the question reserved in Sailors (387 U. S. 105, supra), the Supreme Court did not intend to impose a quantative minimum on the number of governmental powers a local legislative unit must exercise before the one-person, one-vote principle might be applied to it. (See Hadley v. Junior Coll. Dist., 397 U. S. 50, 53-54.) The question was reserved in Sailors because (p. 110): “ the County Board of Education performs essentially administrative functions; and while they are important, they are not legislative in the classical sense.”
The authority of the board in Sailors {supra), did not include resolving collective bargaining impasses, which has been “ classically legislative ” in New York since the enactment of the Taylor Law.
In Sailors {supra, p. Ill), the United States Supreme Court concluded that u at least as respects non-legislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here ” (emphasis added). (Although local school boards were elected, presumably in accordance with the one-man, one-vote principle, the county boards were chosen by delegates from the local boards. *683 Bach local board received one vote, regardless of the population represented by that board.)
The court thus reiterated and re-emphasized that the applicability of the one-person, one-vote principle to appointed legislative officials, such as the public arbitration panel under chapters 724 and 725, is an unanswered question.
The contention of appellants in Harney v. Russo (435 Pa. 183, 191) that: “ All citizens do not have an equal say in the composition of the [public arbitration] panel ” is true with regard to the procedures to be implemented under chapters 724 and 725. The approximately 25,000 citizens of Amsterdam represented by their government, the “ Public Employer ”, and the 90-100 fire and police personnel represented by the “ Employee Organization ”, Local 294, here, are each allowed to appoint one member to this legislative body. The third or public member is appointed jointly, and it is unclear whom the public member represents. It is obvious that the citizens here do not have an equal say in the composition of the panel and, furthermore, that the inequality presented here is an unconstitutional deviation from the requirement of substantial equality of representation.
In Hadley (397 U. S. 50, supra) and Avery (390 U. S. 474, supra), the court did not find the one-person, one-vote principle applicable to the local governmental units because they were “ legislative ” bodies rather than administrative bodies. This court interprets the Sailors distinction as still viable, but also finds that chapters 724 and 725 create “ invidious discriminations ” based on wealth as stated below.
A close reading of chapters 724 and 725 reveals that the local legislative body loses its jurisdiction to resolve collective bargaining impasses between'itself, the public employer, and the public employee organization only after the dispute has gone through the mediation and fact-finding with advisory recommendation stages. The reference of the dispute to a public arbitration panel occurs only after the fact finders’ report has been submitted to PERB for 10 days.
Thus, the local legislative body retains its jurisdiction to bind the public employer to a new collective bargaining agreement if: (1) a resolution is effected before it can be said an impasse exists; or (2) the dispute is resolved within 10 days after submission of the fact finders’ report to the board.
It is, therefore, clear that this case presents a question of first impression under the trilogy of cases (Sailors, Hadley and Avery) which have applied the one-person, one-vote principle *684 to local government. The State, here, has not chosen to fully utilize either the elective or appointive method of selecting or choosing governmental officials to perform governmental functions. The shift from the elective method to the appointive method is contingent upon the existence of an impasse in collective bargaining negotiations. Objectively speaking, the power to create impasses is possessed by both the public employer and the public employees. But the public employee organization under the scheme of chapters 724 and 725 does have the power to deprive the public employer and thereby the local Legislature of their dispute-resolving jurisdiction, while it retains its own throughout any negotiations.
In Hadley v. Junior Coll. Dist. (397 U. S. 50, 58-59, supra), Mr. Justice Black wrote: “ We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not ‘ represent ’ the same number of people does not deny those people equal protection of laws. Sailors v. Board of Education, 387 XL S. 105 (1967) * * * But once a State has.decided to use the process of popular election and ‘ once the class of voters is chosen and the qualifications specified, we see no constitutional way by which equality of voting power may be evaded.’ Gray v. Sanders, 372 U. S. 368, 381 (1963).”
Since the elected local Legislature of the government involved and the appointed public arbitration panel are both “ official bodies ”, and since the power of the former must terminate before the power of the latter can exist at all, this court must determine if this choice itself offends the Constitution and denies equal protection (U. S. Const., 14th Amdt., § 1; N. Y. Const., art. I, § 11).
This court finds chapters 724 and 725 unconstitutional because they create invidious discrimination based on wealth without reasonable classification. The allegations of the City of Amsterdam, not timely denied by defendants, are essentially that it, the City of Amsterdam or public employer, could not maintain its power to resolve this impasse because it could not legally tax its citizens or indebt itself to pay what the fact finder recommended, that is, a 10% increase retroactive for all of 1974 for all fire and police personnel. Thus, by continuing to assert that the public employer pay it at rates beyond which the City of Amsterdam could legally pay, the employee organization here forced ,Kthe termination of the power of the public employer to resolve political questions. Other local Legislatures through *685 out the State, with the exception of New York City, who have not borrowed up to the authorized limits for their indebtedness or who have a tax base available to utilize, are not deprived of their power to determine this political question. Thus, in effect, equality of voting power is evaded. For, in retrospect, it is apparent that there has been a qualitative dimunition of the franchise of the citizens of Amsterdam as compared with the franchise of citizens in cities that still have the power to resolve disputes before impasse occurs.
This court has considered the following New York precedents that apply the one-person, one-vote principle to State or local government: 1. Shanker v. Regents of the Univ. of State of N. Y. (27 AD 2d 84, affd. 19 N Y 2d 951); 2. MacKenzie v. Travia (55 Misc 2d 1016); 3. Bergerman v. Lindsay (58 Misc 2d 1013, affd. 25 N Y 2d 405, cert. dsmd. 398 U. S. 955 for want of jurisdiction because the statute and procedure in question did not have State-wide application [see Moody v. Flower, 387 U. S. 97]); 4. Hairston v. Model Cities Agency of City of N. Y., (66 Misc 2d 443); 5. Metropolitan Transp. Auth. v. County of Nassau (28 N Y 2d 385); 6. Board of Educ. of Tri-Val. Cent. School Dist. v. BOCES (37 A D 2d 330).
In Shanker (supra, pp. 86-87), and MacKenzie (supra), the one-person, one-vote principle was held inapplicable because the plaintiffs could not vote for any member of the Board of Regents, said board not being a general elective organisation and its members not being plaintiffs’ elected representatives. In Berger man (25 N Y 2d 405, 412, supra), decided three months before Hadley (397 U. S. 50, supra) the Court of Appeals held: “ It would follow, then, that the budget-making role of the Board of Estimate is not of such a legislative character as to prohibit the selection of executives from boroughs of unequal size, when such members could never alone control budget decisions.” (Emphasis added.)
In Hairston (66 Misc 2d 443, 447, supra), wherein petitioners sought to restrain conducting a proposed election for the local policy committee of a Model City Agency, the court held: “ Constitutionally, it is only when the initial legislation directs the use of popular elections that there must be compliance with constitutional safeguards (Hadley v. Junior Coll. Dist., 397 U. S. 50, supra). In the case at bar, the enabling legislation does not require elections, on the contrary, the statute uses the word ‘ participation ’ not 1 representation ’, a subtle but pertinent distinction.”
*686 In Metropolitan Transp. Auth. (28 N Y 2d 385, 390, supra), the court held: “ The ‘ super-government argument must fail, since the MTA does not have the power to tax. In assessing costs upon the county for station operation, the Authority simply determines the amount of, and requests payment for, charges which the Legislature has empowered it to collect. There is no levy of taxes by the MTA. And, certainly, there is no constitutional requirement that the members of the Authority be elected rather than appointed. (See Hadley v. Junior Coll. Dist., 397 U. S. 50, 58; Sailors v. Board of Educ., 387 U. S. 105, 110.) ” Similarly, in Board of Educ. of Tri-Val. Cent. School Dist. (37 A D 2d 330, 331, supra), the court held: “ As to appellant’s second contention, since respondent has no power to tax, it is not subject to the one-man, one-vote rule and appellant’s assertion that it is an unrepresentative body must fail (Sailors v. Board of Educ., 387 U. S. 105, 108, 109-111; see, also, Hadley v. Junior Coll. Dist., 397 U. S. 50).”
These precedents confirm the interpretation' that the legislative-administrative distinction remains relevant for applying the one-person, one-vote principle to local governmental bodies if the initial (or former) enabling legislation directs an election, if the members of such body have sufficient “ legislative power ” to alone control budget decisions, and if such body has the power to tax. Since these three conditions are present here, this court concludes the one-person, one-vote principle must be applied to the public arbitration panel.
In conclusion, since the public arbitration panel will exercise the former powers of a general elective legislative organ to -which the State has delegated certain of the State’s legislative powers (once an unresolved impasse is determined to exist), this now official body must, by a parity of reasoning, be subjected to the one-man, one-vote requirement. Alternatively, the State’s decision to redelegate its legislative, impasse resolving or political decision making power from the local legislative body to the Public Arbitration Panel cannot be made contingent on the general elective legislative organ’s inability to prevent impasse from occurring or, phrased differently, the employee organization’s continuing ability to assert that an impasse exists. If either of the alternative formulations were constitutional, the citizens of Amsterdam and similarly situated citizens of other cities throughout the State are and could be deprived of their “ substantial right to be heard and to participate, through [their] elected representatives, in the business of gov- *687 eminent on an equal basis with all other individuals (Seaman v. Fedourich, 16 N Y 2d 94,102, supra).
While there is ‘6 nothing in the Constitution to prevent experimentation ” (Sailors v. Board of Educ., 387 U. S. 105, 111, supra), experimentation must cease when it runs afoul of a fundamental constitutional right. (See Dunn v. Blumstein, 405 U. S. 330, 336; San Antonio School Dist. v. Rodriguez, 411 U. S. 1, 34.) The Constitution then must either be upheld or amended by proper procedure.
Since this court finds that chapters 724 and 725 violate section 1 of the Fourteenth Amendment of the United States Constitution because they are invidious discriminations without reasonable classification and they deny a fundamental right (as expressed in Seaman, Dunn and San Antonio v. Rodriguez, all supra), this court also finds that chapters 724 and 725 violate section 2 of the Fourteenth Amendment of the United States Constitution, which reads in toto as follows: “ Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial offices of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.” [Emphasis added.]
Since it is clear that the public arbitration panel will be performing classically legislative functions and that the equal protection clauses of both the United States and New York Constitutions require that there be an election of these “ State officers ” (who are exercising legislative power delegated to them by the State) and the right to vote in such election would be denied and abridged by chapters 724 and 725, the reduction in New York’s representation in the Congress of the United States in proportion to the number of qualified voters who are deprived of their franchise is also required. Since it is unclear after scrutiny of the available legislative history bearing on section 2 of the Fourteenth Amendment, who shall effect the aforementioned reduction in the United States Congress and because *688 the instant diminution of the franchise of approximately 25,000 citizens of Amsterdam may not mandate the implementation of such reduction according to census figures and New York’s representation in the Congress anyway, this court will not mandate any such reduction.
The above-mentioned legislative history bearing on section 2 of the Fourteenth Amendment which this court has considered, is found in two secondary, albeit, authoritative sources. They are respectively: 1. Richardson v. Ramirez (418 U. S. 24, 41-56, and Mr. Justice Marshall’s dissent in the same case, pages 572-589, and 2. Mr. Justice Harlan’s dissenting position in Reynolds v. Sims (377 U. S. 533, 589). In Richardson (supra, p. 55) the court stated:
‘ ‘ Nor can we accept respondents ’ argument that because § 2 was made part of the Amendment ‘ ‘ ‘ largely through the accident of political exigency rather than through the relation which it bore to the other sections of the amendment.” ’
” We must not look to it for guidance in interpreting § 1. It is as much a part of the Amendment as any of the other sections, and how it became a part of the Amendment is less important than what it says and what it means.”
II.
Section 1 of article XVI of the New York Constitution reads in part: “ The power of taxation shall never be surrendered, suspended or contracted away, except as to securities issued for public purposes pursuant to law. Any laws which delegate the taxing power shall specify the types of taxes which, may be imposed thereunder and provide for their review.”
Without reading the debates and deliberations of the 1938 Constitutional Convention of the State of New York which the above-quoted section was adopted, it would appear that this article and section is the embodiment of or the closest facsimile of the cry of the American struggle for independence ‘ * no taxation without representation ” and the phrase found in the Declaration of Independence under the part noted as “ facts to be submitted to a candid world ” that reads “ He [King George] has combined with others to subject us to a jurisdiction foreign to our constitution, and unacknowledged by our laws; giving as his assent to their acts of pretended legislation * * * for imposing taxes on us without our consent ”.
This court holds that the interpretation of the meaning of this section of article XVI of the New York Constitution given in Murphy v. Erie County (34 A D 2d 295) is correct. The *689 court, in Murphy, extrapolated from and interpreted the Court of Appeals opinion in Matter of Roosevelt Raceway v. Monaghan (9 NY 2d 293, 306-311). The court, in Murphy, noted (p. 299): “ Before we can hold that a municipality has surrendered the power of taxation it must first be established that someone other than the municipality had the power to determine the disposition of tax moneys (Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293, app. dsmd. 368 U. S. 12).”
The public arbitration panel does have the power of taxation because it has the power to determine disposition of tax moneys. Since it does have the power of taxation, under the New York precedents that considered Baker v. Carr (369 U. S. 186) and progeny that this court has cited above, equality of representation Is required for this legislative body. Of course, this delegation of the power of taxation is not, without a consideration of Baker v. Carr, unconstitutional. The panel is an official body of the State competent to hold powers delegated to it by the State, and chapters 724 and 725 do provide some standards and safeguards with regard to how this delegated power must be exercised. This court here expresses no opinion on the adequacy of these standards of safeguards. The fault of chapters 724 and 725 is rather that they allow an official body to exercise a general and . substantial legislative power without substantial equality of representation for the citizens of Amsterdam, as required by the equal protection clause of both the New York and the United States Constitutions.
Chapters 724 and 725 also present a question of constitutionality under the second sentence of section 1 of article XVI of the New York Constitution. Since this court holds that chapters 724 and 725 delegate the taxing power to the public arbitration panel, it must be determined whether the same chapters specify the types of taxes which may be imposed thereunder and also whether these chapters provide for review. Close scrutiny of chapters 724 and 725 indicates no express grant to this subdivision of the State, the public arbitration panel, of the types of taxes which may be imposed thereunder. The words ‘ ‘ final and binding” in the last sentence of chapters 724 and 725 on their face do not provide for any type of review. This court has already indicated that the panel’s power to dispose of tax moneys is probably reviewable under article 75 of the CPLR if the interpretation in Mount St. Mary’s Hosp. v. Catherwood (26 N Y 2d 493, supra), can be held to apply to chapters 724 and 725. This would in effect, create a review of the power *690 of taxation under article 75 of the CPLB, where such review is usually pursuant to article 78 of the CPLB.
Alternatively, if the public arbitration panel cannot be said to have the power of taxation under the Murphy-Boosevelt Raceway formula, then this court must inquire what power the public arbitration panel does have. Under chapters 724 and 725, the public arbitration panel certainly has the power to create a legal liability for the municipality. If ‘ ‘ legal liability ” is an incorrect formulation, then perhaps it can be said the public arbitration panel has the power to award a “ claim ” to the public employee organization enforceable against the public employer. The public arbitration panel certainly has contract making power by which it binds the public employer as well as the public employee organization. Thus, if it cannot be said that the public arbitration panel has the power to dispose of tax moneys and, therefore, the power of taxation, the power of taxation in either the levying form or the disposing form must still reside somewhere, i.e., with the subdivision of the State.
But if there is an impasse present, the elected local legislature and the elected local executive officers certainly do not have the disposition power of taxation, because the disposition of tax moneys must be made pursuant to a balanced budget (e.g. Village Law, art. 5), and this budget cannot exist until the public arbitration panel has made its final rule. Nor do the local elected bodies truly have the power of taxation while the public arbitration panel is considering the positions of the public employer and the public employee organizations. The local elected bodies, it is true, will have levied and perhaps collected their taxes for a given fiscal year but a further levy and collection of tax moneys cannot be made and done until the panel has ruled and the budget has been balanced.
The State Legislature itself cannot be said to have this power of taxation in either the levying or disposing sense because, if the panel does not have the levying and disposing power, it must remain in the local elected legislative or executive branch. Such an exercise of power by the State Legislature without a prior repeal of the laws delegating the power of taxation to the municipalities would contravene both the New York Constitution and New York laws.
To conclude, if the State, the local legislative and executive branches and the public arbitration panel do not have the power of taxation, there is an unconstitutional suspension of such powers under the first sentence of section 1 of article XVI of the New York Constitution. In Matter of Roosevelt Raceway *691 v. Monaghan (9 N Y 2d 293, 308-309, supra), the Court of Appeals held: “ In the present case, Roosevelt would not be aided even if we were to accept its concept of tax exemption. Section 1 of article XVI separately prohibits any attempt to contract away the power of taxation unless sanctioned by the people themselves. (Cf., e.g., as to housing, N. Y. Const., art. XVIII, § 2.) A contract for a pre-established limit on tax liability, whether it be considered as conferring ‘ tax exemption ’ or ‘ tax savings ’, or tax relief by any other label, is clearly barred by this sweeping prohibition” (Emphasis added.) This same sweeping prohibition also separately prohibits any attempt to suspend the power of taxation.
This court has considered the cases which make reference to section 1 of article XVI. Besides Matter of Roosevelt Raceway {supra), the following two New York Court of Appeals cases are pertinent: Jenead v. Village of Scarsdale (18 N Y 2d 78) and Metropolitan Transp. Auth. v. County of Nassau (28 N Y 2d 385). In Jenead (p. 84), the court held a charge or fee of $250 per lot to be collected by the village and credited to a separate fund to be used for park, playground and recreational purposes in such manner as would be determined by the Village Board of Trustees from time to time in lieu of a dedication of land for the same purpose was ‘ ‘ not a tax at all but a reasonable form of village planning for the general community good”. The court further, in Jenead, indorsed the holding of the Supreme Court of Wisconsin in Jordan v. Menomonee Falls (28 Wis. 2d 608, 622) wherein it was held that: “ the equalization fee [was not a tax] imposed on the land * * * as such but [was a fee] imposed on the transaction of obtaining approval of the plat ”, In Metropolitan Transp. Auth. {supra, p. 390) the Court of Appeals held: “ In assessing costs upon the county for station operation, the Authority simply determines the amount of, and requests payment for, charges which the Legislature has empowered it to collect. There is no levy of taxes by the MTA. ” The ruling under chapters 724 and 725 by the Public Arbitration Panel or its disposition of tax moneys is clearly not a mere fee or “ cost charge ”.
III.
Inquiry by this court has shown that a confirmation of the public arbitration panel’s award, to be effective, may require this and other similarly situated courts to act in violation of article VT (§ 7, ,subd. c) of the New York Constitution, which reads: “ If the legislature shall create new classes of action and proceedings, the supreme court shall have jurisdiction over such *692 classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.” This court does not believe it would have the necessary jurisdiction to act as described below: “ it will still be open to this Court to rule that the Act of June 24,1968 [the Pennsylvania equivalent of chapters 724 and 725] impliedly authorizes a court-approved millage ceiling increase to pay JKe arbitration award where necessary, or to hold that the municipal budget must be adjusted in other places in order to provide resources for policemen’s or firemen’s salaries.” (Harney v. Rosso, 435 Pa. 183, 193.)
This court is herein mindful of section 47 of subdivision IV of Constitutional Interpretation (McKinney’s Cons. Laws of N. Y., Book 2, Constitution, p. 42): “ In determining the constitutionality of a statute, it is to be remembered that the question should be determined not by what has been done under it in a particular instance, but by what may be done under and by virtue of its authority.” If chapters 724 and 725 are constitutional, the courts would be forced to usurp a legislative function and to determine a political question.
It is unclear to this court whether chapters 724 and 725 create the new classes of actions and proceedings necessary if chapters 724 and 725 are constitutional. Of course, since this court holds chapters 724 and 725 unconstitutional and that irreparable injury to the City of Amsterdam has already occurred, this court will not pass upon the above difficult question of statutory construction and jurisdiction of the Supreme Court of the State of New York.
IV.
This court has considered various cases cited by defendants in their memorandums of law. Since chapters 724 and 725 present a question of first impression for the New York courts, the decisions, especially those of the courts of Michigan and Pennsylvania, which defendants cite, are, if anything, persuasive, not authoritative. In Dearborn Fire Fighters Union Local No. 412, IAFF v. City of Dearborn (42 Mich. App. 51), the Court of Appeals of Michigan considered the constitutionality of statutes similar to chapters 724 and 725 involved herein. The courts stated therein (p. 56): “ The final constitutional argument advanced by the city is that the compulsory arbitration statute surrenders the power to impose taxes in violation of Const. 1963, art. 9, § 2. Defendant’s argument is that since the panel of arbitrators has the authority to increase the expenses *693 necessary for the city to maintain its police and fire departments, it necessarily would command the city to increase its taxes in order to meet the additional burden. The logical extension of defendant’s argument, as noted by Judge Kaufman below, would compel the conclusion that any increase in the price of any commodity which a city must purchase would also be violative of the constitution. While inflation may certainly be understandable, we are not yet ready to hold it unconstitutional. Furthermore, the city is always free to reallocate resources to meet the increased demands placed upon it by an arbitration award without necessarily increasing taxes.”
This court rejects the so-called “ logical ” extension, as noted above. This logical extension with a compelling conclusion is really a leap of faith, in that it fails to consider “ the legal obligation” exception to debt limitations binding a New York municipal corporation (N. Y. Const., art. VIII, §§ 2, 5; Local Finance Law, § 136.00, subd. 1, par. [a]). Commodities exist only, they are not empowered to dispose of tax moneys, make political and legislative decisions and confer themselves with “ must purchase” status. The Honorable Judge Kaufman-’s. notation also fails to take into consideration that, if a New York municipality finds a commodity which it must purchase, it can make provisions in the budget for its upcoming fiscal year to impose constitutionally allowable taxes to obtain revenues to make such purchase or it can re-evaluate the status of the commodity with relation to the municipality’s needs to determine whether or not it really is a“ must purchase ”.
This court does not have the text of the Michigan Constitution of 1963 (art. 9, § 2), before it, but it is pertinent to note that the Michigan court, in Dearborn Fire Fighters (supra), considered only the surrendering of the power to impose taxes and did not consider the precise language of section 1 of article XVI of the New York Constitution, which prohibits the suspension of the power of taxation.
In evaluating the persuasiveness of the non-New York opinions dealing with compulsory arbitration and civil servants, this court has considered most carefully the opinions cited from Michigan and Pennsylvania. The key fact in evaluating these opinions is to note the relevant constitutional provisions in effect in each State at the time the opinions were handed down. The Pennsylvania Supreme Court, in Erie Firefighters Local No. 293 v. Gardner (406 Pa. 395), found that a compulsory arbitration statute analogous to, although certainly not identical with, chapters 724 and 725 violated the Pennsylvania Constitution *694 as it then read. But, in Harney v. Rosso (435 Pa. 183, supra), after a rather lengthy amendment to the Pennsylvania Constitution (art. III, § 31), the court found that another compulsory arbitration statute for firefighters and policemen did not violate the Pennsylvania Constitution. In Dearborn Fire Fighters {supra, p. 55), the Court of Appeals of Michigan noted that: “ the Constitution specifically provides that ‘ The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in a state classified civil service ”. (Mich. Const, of 1963, art. 4, § 48.) The Taylor Law does not rise to the status of a provision of the New York Constitution.
V.
This court does not pass on the merits of plaintiff’s arguments numbered 1, 2, 3 and 5, nor does this court pass on the merits of the remainder of plaintiff’s arguments in its complaint (par. 19, subpars. a-j).
VI.
PBOOEDUBAL ASPECTS
The parties to this action have already been heard, but only upon the question of whether a preliminary injunction should issue against defendants pending the determination of the underlying declaratory judgment-permanent injunction cause of action. Plaintiff has informed this court that the Attorney-General answered the complaint on or about November 14,1974, while defendant Local 294 has not yet interposed an answer. It appears that both defendants are technically in default and that plaintiff, after: (1) application to Supreme Court, (2) proof of default (CPLR 3215), and (3) notice to defendants, would be entitled to a final judgment. Plaintiff has not so applied, proved default, or given notice to defendants.
Despite the foregoing procedural posture and possibilities and despite the usual practice of rendering a declaratory judgment only after joinder of issue and a full trial (Kronish v. John J. Reynolds, Inc., 33 A D 2d 366; Medical World Pub. Co. v. Kaufman, 29 A D 2d 859), this court concludes it has the requisite jurisdiction to render a final declaratory judgment on the merits: “ Moreover, it is well-settled that judicial reluctance to decide questions which need not be reached should yield when, as here, important constitutional issues are raised and the controversy is of a kind likely to recur. (Matter of Concord Realty Co. v. City of New York, 30 N Y 2d 308, 312-313; Matter *695 of Oliver v. Postel, 30 N Y 2d 171, 177-178; Matter of Gold v. Lomenzo, 29 N Y 2d 468, 475-476; Matter of Bell v. Waterfront Comm., 20 N Y 2d 54, 61; East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 133, 135).” (Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15, 19.)
In the instant ease, plaintiff has posed a justiciable controversy with respect to its rights that is present, real, definite and substantial and ripe for judicial determination (Prashker v. United States Guar. Co., 1 N Y 2d 584; Park Ave. Clinical Hosp. v. Kramer, 26 A D 2d 613, affd. 19 N Y 2d 958; see CPLE, 3001). Defendants threaten to pursue a course of conduct that would be detrimental to plaintiff, and it has properly sought á declaration that their threatened conduct will infringe upon its legally protected rights (De Veau v. Braisted, 5 A D 2d 603, affd. 5 N Y 2d 236, affd. 363 U. S. 144; Dun & Bradstreet v. City of New York, 276 N. Y. 198; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.06g; Jones v. Banner Moving and Stor., 78 Misc 2d 762, 769).
As noted in V, this court has not passed on several of plaintiff’s factual allegations and legal assertions. This court perceives itself as determining herein only questions of law. The court is informed, furthermore, that plaintiff and defendant PEEB had considered submitting this controversy on stipulated facts pursuant to CPLE 3222. In sum, this court believes that a final judgment is not prejudicial to defendants and that the interests of justice and all parties are best served by rendering a decision on the merits from which an appeal can be taken on the merits.
In holding chapters 724 and 725 unconstitutional and granting a permanent injunction, this court is mindful of the rules of statutory construction and constitutional interpretation (see McKinney’s Cons. Laws of N. Y., Book 1, ¡Statutes; Book 2, Constitution) as well as the requirements for permanent injunction (“ the danger of irreparable injury * • * and the inadequacy of other remedies to afford just and equitable relief ”, 2 Carmody-Wait 2d, New York Practice, § 78:102 [and cases cited therein]). Since Seaman v. Fedourich (16 N Y 2d 94, supra), makes it clear that this court has jurisdiction to enforce the one-person, one-vote principle, this court is also bound by the “ close scrutiny ” standard of judicial review as articulated in the following eases: 1. Reynolds v. Sims (377 U. S. 533); 2. Harper v. Virginia Bd. of Elections (383 U. S. 663); 3. McDonald v. Board of Election (394 U. S. 802); 4. Kramer v. Union School Dist. (395 U. S. 621); 5. Evans v. *696 Cornman (398 U. S. 419, 422-423); 6. Bullock v. Carter (405 U. S. 134); 7. Dunn v. Blumstein (405 U. S. 330, 335-343, supra); 8. San Antonio School Dist. v. Rodriguez (411 U. S. 1, 33-36).
These cases establish that in instances of alleged franchise dilution, as well as franchise denial, a court must determine whether the restrictions on the right to vote are necessary to promote a compelling State interest and “ if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity ’ ’. (Dunn v. Blumstein, 405 U. S. 330, 343, supra.)
This court has considered the merits of this controversy under each of the applicable standards — New York and Federal. Under the former, this court holds that the unconstitutionality of the statutes has been demonstrated beyond a reasonable doubt, while under the latter, substantial State interests (the promotion of harmonious public employer-public employee relations, the swift resolution of bargaining impasses and the prevention of public sector strikes) are outweighed by another compelling National and State interest — indeed a fundamental right — the preservation of the one-person, one-vote principle.
While municipalities in New York are free to agree to submit to compulsory arbitration, as New York City has done, their forced submission abridges the most fundamental concept of our State and Federal Government — that is, consent of the governed. Harmony is not promoted by compulsion, resolution is not wrought by bludgeoning, and public employee strikes are already illegal. The tasks of finding other reasonable ways to achieve the State’s goals in the public labor sector with a lesser burden on constitutionally protected activity are essentially legislative. These ways must be found and developed with a renewed awareness of the essential fundamental of our political heritage —the consent of the governed.